UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ADAMS OUTDOOR ADVERTISING          :
LIMITED PARTNERSHIP,               :
               Plaintiff,       :
                                  :
       v.                        :        No. 5:17-cv-01253
                                  :
PENNSYLVANIA DEPARTMENT OF          :
TRANSPORTATION;[1] and             :
LESLIE S. RICHARDS,                 :
              Defendants.      :

_____

**O P I N I O N**
**Defendant Richards' Motion to Dismiss, ECF No. 15 – Granted in part / Denied in part**

Joseph F. Leeson, Jr.                                    February 9, 2018
United States District Judge

I.     **INTRODUCTION**

      Plaintiff Adams Outdoor Advertising Limited Partnership ("Adams") challenges the

constitutionality of the Interchange Prohibition in Pennsylvania's Outdoor Advertising Control

Act of 1971, 36 P.S. §§ 2718.101 – 2718.115 (the "Act"). *See also* Pa. Code §§ 445.1 – 445.9.

Defendant Leslie S. Richards ("Richards"), the Secretary of the Pennsylvania Department of

Transportation ("PennDOT"), has moved to dismiss the Amended Complaint or, in the

alternative, to transfer venue to the Middle District of Pennsylvania.  For the reasons set forth

below, the motion is denied as to Adams's claim that the Act fails First Amendment scrutiny, the

facial challenge to the Act under the First Amendment based on the absence of any time

restrictions, and Adams's as-applied challenge under the First Amendment based on the delay

before its application was decided.  The motion to dismiss is granted with respect to Adams's

---

[1]     The Pennsylvania Department of Transportation was terminated as a Defendant on
August 4, 2017.

request for monetary damages, Adams's vagueness challenge regarding the 500-feet spacing requirement in the Interchange Prohibition, and Adams's facial substantive due process claim. The motion to dismiss is granted in part as to Adams's as-applied substantive due process claim and equal protection claim, as these claims are dismissed without prejudice as premature. The request to transfer venue is denied.

## II.  BACKGROUND

Adams is in the business of outdoor advertising (leasing space from private property owners and erecting billboards that disseminate messages). It filed a Complaint and an Amended Complaint alleging that the Act is unconstitutionally vague with respect to the regulation that "no structure may be erected adjacent to or within five hundred feet of an interchange or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way." 36 P.S. § 2718.105(c)(2)(i) ("Interchange Prohibition"). The Interchange Prohibition includes an exemption, stating that "[o]fficial and 'on premise' signs, as defined in section 131(c) of Title 23, United States Code, shall not be counted nor shall measurements be made from them for purposes of determining spacing requirements." *See* 36 P.S. 2718.105(c)(2)(iv). "Official signs" are defined as "[d]irectional or other official signs or notices erected and maintained by public officers or agencies pursuant to and in accordance with direction or authorization contained in State of Federal law, for the purpose of carrying out an official duty or responsibility." 23 C.F.R. 750.105(a). "On-premise signs" are "[s]igns not prohibited by State law which are consistent with the applicable provisions of this section and § 750.108 and which advertise the sale or lease of, or activities being conducted upon, the real property where the signs are located." *Id.*

To support its claim that the provision is vague, Adams alleges that PennDOT has changed its interpretation of the Interchange Prohibition several times in the past thirty-seven years as to whether the 500-feet spacing requirement applies to structures on the opposite side of the highway from an interchange or safety rest area, or only on the same side. The last time PennDOT changed its interpretation was in 1997, when it determined that the 500-feet spacing requirement in the Interchange Prohibition applies to structures located on both sides of the highway. This interpretation, which Adams complains PennDOT made even though there were no amendments to the Act requiring a new interpretation, was announced in a strike-off letter issued on March 27, 1997.[2] Adams asserts that this interpretation conflicts with 67 Pa. Code. § 445.4, which states that the "distance between sign structures shall be measured along the nearest edge of the pavement between points directly opposite the signs *along the same side of the traveled way*." 67 Pa. Code § 445.4(2)(v) (emphasis added).

At the time the complaints were filed, Adams had filed an application to erect a billboard along the east-bound (south) side of U.S. Route 22 in Hanover Township, Northampton County, but had not yet received a response from PennDOT.[3] The proposed billboard would not be within 500 feet from an "exit . . . or entrance [ramp] to the main-traveled way" as measured along the south side of U.S. Route 22, but it would be within 500 feet from a ramp located on the north side of U.S. Route 22.

---

[2]     The 1997 strike-off letter states that PennDOT's prior interpretation was superseded by two Commonwealth Court opinions, which held that the 500-feet spacing requirement applies to any structure regardless of which side of the highway it is erected, and that this interpretation conforms with the purposes of the Act. *See* Am. Compl. Ex. B, ECF No. 10 (citing *U.S. Outdoor Advertising Co. v. Commonwealth Dep't of Transp.*, No. 15 C.D. 1996 (Oct. 17, 1996); *Media v. Commonwealth Dep't of Transp.*, 661 A.2d 479, 481 (Pa. Commw. Ct. 1995), *appeal denied* 672 A.2d 31 (Pa. 1995)).

[3]     Adams alleges that it filed its permit application on March 8, 2016, but that PennDOT took no action in the full calendar year. Am. Compl. ¶¶ 37-38, ECF No. 10. Richards states in the Motion to Dismiss that the application was denied on April 27, 2017. Mot. 3, ECF No. 15.

Adams raises numerous claims, alleging violations of its First and Fourteenth Amendment rights of free speech and freedom of expression, as well as violations of due process and equal protection. Adams challenges the constitutionality of the Act on its face and as applied, and alleges that the Interchange Prohibition is unconstitutionally vague and not narrowly tailored to advance any governmental interest. Adams complains about the lack of time restrictions in the Act, asserts that the Act is so vague as to be impossible of reasonably accurate interpretation, and alleges that PennDOT has unlimited discretion to give varying interpretations of the Interchange Prohibition. Adams also asserts violations of his substantive due process and equal protection rights.

## III. STANDARDS OF REVIEW

### A. Motion to Dismiss

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Twombly*, 550 U.S. at 555). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be

granted.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### B.      Motion to Transfer Venue

When venue is improper, the court must dismiss the case or, if in the interests of justice, transfer it to any district or division in which it could have been brought.  28 U.S.C. § 1406(a).  Additionally, even when venue is proper, § 1404 allows the court to transfer venue "[f]or the convenience of parties and witnesses, [if] in the interest of justice, . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  *See also Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. 16-3103, 2017 U.S. Dist. LEXIS 25255, at *21-22 (E.D. Pa. Feb. 23, 2017) ("Venue can be appropriate in more than one district.").  Transfer is in "the discretion of the court."  28 U.S.C. § 1404(b); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981) (holding that "where the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference").  "The burden of establishing the need for transfer ... rests with the movant."  *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-80 (3d Cir. 1995).  The court should consider the following factors:

> (1) the plaintiff's choice of forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) "convenience of the parties as indicated by their relative physical and financial conditions"; (5) "the convenience of the witnesses--but only to the extent that the witnesses may actually be unavailable for trial in one of the fora"; (6) the location of books and records; (7) the enforceability of the judgment; (8) practical considerations that could expedite or simplify trial; (9) the level of court congestion in the two fora; (10) "the local interest in deciding local controversies at home"; (11) the public policies of the fora; and (12) in a diversity case, the familiarity of the two courts with state law.

*In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) (quoting *Id.*).  The first six factors relate to private interests, while the remaining six pertain to the public interest.  *Jumara*, 55 F.3d at 879.

## IV.    ANALYSIS[4]

In alleging combined[5] violations of the First and Fourteenth Amendments, Adams asserts that the Act results in a total prohibition of its right to speak at the proposed location and that because the vagueness of the Interchange Prohibition fails to give a person of ordinary intelligence fair notice and also allows for differing interpretations, it is inherently inconsistent with a valid time, place, and manner regulation because it has the potential for becoming a means of suppressing speech for its content.  Adams claims that the varying interpretations also violate equal protection.  Finally, Adams asserts that the absence of any time constraints on PennDOT in the Act, and PennDOT's one-year delay in rejecting Adams' application violates free speech. These claims also include substantive due process challenges.  The merits of each of these claims, as well as the applicable standards, are reviewed point by point hereinafter.  Initially, however, the Court addresses whether Adams may obtain monetary relief from Richards on any of these claims.

### A.    Richards cannot be liable for monetary damages.

Richards argues that qualified immunity shields her from liability for civil damages because there is no Pennsylvania Supreme Court or Third Circuit authority clearly establishing that any part of the Act is unconstitutional.  Adams responds that its claim is now limited to injunctive relief, which is not barred by the Eleventh Amendment, and that it is "prepared to accept dismissal of its claim against Secretary Richards for monetary relief."  Opp. 10.

---

[4]    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.
[5]    Due to the overlapping nature of many of the constitutional claims, the parties are having difficulty determining which constitutional theories Adams's claims should be evaluated under. *See* Pl.'s Resp. 17 n.2, ECF No. 16-1, and Def.'s Reply 4, ECF No. 17.  This Court reads the Motion to Dismiss as seeking dismissal of all claims and therefore considers all of Adams's claims under the varying constitutional theories.

Consequently, all claims for monetary relief are dismissed and Adams may proceed only on its request for injunctive relief.

      **B.**      **In light of the exclusions identified in the Interchange Prohibition, Adams's claim that the Interchange Prohibition violates its First Amendment right to speak at the proposed location is sufficient to survive through this early stage of the proceedings.**

In determining whether a law violates the First Amendment, the first step is to determine whether the statute is content-based or content-neutral. *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1053 (3d Cir. 1994). "If a statute is content-based, then the State is required 'to show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" *Id.* (quoting *Boos v. Barry*, 485 U.S. 312, 321 (1988)). On the other hand, if the statute is content-neutral, "the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)); *Riel v. City of Bradford*, 485 F.3d 736, 743 (3d Cir. 2007). "The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791.

Adams incorrectly contends that the issue is not whether the Interchange Prohibition is content-based or content-neutral, but whether it results in a total prohibition of Adams's right to speak at the proposed location. Adams argues that the Act's arbitrary application is inconsistent with a valid time, place, and manner regulation and, instead, it should be considered a total ban

on free speech. Despite Adams's suggestion to the contrary, however, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." *See Heffron v. Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 647 (1981). Adams's reliance on *Central Hudson*[6] for the position that the Act can only withstand a constitutional challenge if it serves a substantial governmental interest and is not more extensive than necessary to serve that interest, is also misplaced because the test announced in *Central Hudson* only applies to commercial speech cases. The Amended Complaint, however, alleges that Adams disseminates "commercial and non-commercial speech." Am. Compl. ¶¶ 15-16. Accordingly, Adams's claims must be analyzed under the framework provided by *Rappa*. *See Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387-88 (3d Cir. 2010) ("Melrose's First Amendment claim [that the Zoning Board's rejection of its sign applications violated its First Amendment free speech and Fourteenth Amendment equal protection rights] is not controlled by *Central Hudson*, but instead should be evaluated under the test we delineated in *Rappa v. New Castle County*, 18 F.3d 1043 (3d Cir. 1994).").

Under *Rappa*, the court must first determine whether the statute is content-based or content-neutral. Richards asserts that "the answer in this case is straightforward and indisputable— the regulation is content-neutral." Mot. 9 (citing *Johnson v. City and County of Philadelphia*, 665 F.3d 486, 491 (3d Cir. 2011)). Unfortunately, the answer is not so simple.[7]

---

[6]     *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557 (1980) (outlining the four-part analysis to determine whether commercial speech was restrained in violation of the First Amendment).

[7]     It will be apparent from the analysis below why the statute at issue in *Johnson*, which prohibited persons from posting "any banners, pennants, placards, posters, stickers, advertising flags, [or] plaques, on any utility pole, streetlight, traffic or parking sign or device, including any post to which such sign or device is attached, historical marker, or City-owned tree or tree in the public right-of-way," *see Johnson*, 665 F.3d at 489 (internal citations omitted), is distinguishable.

"[D]etermining whether a statute is content-based or content-neutral has not been entirely straightforward." *Riel*, 485 F.3d at 744. When considering sign ordinances, the Third Circuit Court of Appeals has applied a context-sensitive analysis for determining whether a restriction on speech is content-based or content-neutral. *Melrose*, 613 F.3d at 388-89 (finding that some signs, such as speed limit signs, are more important than others, such as political signs). The *Rappa* court issued the following guidance:

> when there is a significant relationship between the content of particular speech and a specific location or its use, the state can exempt from a general ban speech having that content so long as the state did not make the distinction in an attempt to censor certain viewpoints or to control what issues are appropriate for public debate and so long as the exception also survives the test proposed by the *Metromedia*[8] concurrence i.e. the state must show that the exception is substantially related to advancing an important state interest that is at least as important as the interests advanced by the underlying regulation, that the exception is no broader than necessary to advance the special goal, and that the exception is narrowly drawn so as to impinge as little as possible on the overall goal.

*Rappa*, 18 F.3d at 1065.

The statute at issue in *Rappa* prohibited "the posting of signs 'within 25 feet of the right-of-way line of any public highway if visible from any portion of the same' and signs placed 'on the right-of-way of any public highways.'" *Id.* at 1051 (quoting Del. Code Ann tit. 17, § 1108(a), (b)(1)). The statute also included "a series of often overlapping exceptions," including "Directional or warning signs and official signs or notices" and "Signs advertising activities conducted on the real property may be posted on that real property" (on-premise signs).[9] *Id.* The court applied intermediate scrutiny to directional or warning signs and official signs or notices, and concluded that "the state's interest in these signs is greater than the state's aesthetic

---

[8]     *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490 (1981).
[9]     Both of these exclusions are also excluded from the Interchange Prohibition at issue in the instant case.

and safety interests in banning these signs, and the exemption is narrowly tailored to serve the state interest." *Id.* at 1066. As to on-premises signs, the *Rappa* court determined that an exemption for on-premise signs is "not a content-based exception at all" because "[a]lthough evaluating whether a sign is an onsite sign does require the state to analyze the content of the sign, the onsite exception does not preclude any particular message from being voiced in any place; it merely establishes the appropriate relationship between the location and the use of an outdoor sign to convey a particular message." *Id.* at 1067.

Several years after *Rappa* was issued, however, the United States Supreme Court issued an opinion holding that "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2231-32 (2015) (concluding that the Sign Code was subject to strict scrutiny because it singled out signs bearing a particular message [for example]: the time and location of a specific event). The Court explained that the first step is to consider whether the statute is content-neutral on its face, before turning to the statute's purpose. *Id.* at 2227. The Sign Code at issue prohibited the display of outdoor signs anywhere within the Town without a permit, but exempted twenty-three categories of signs. *Id.* at 2224. The Court focused on three categories of exempt signs, including "Temporary Directional Signs Relating to a Qualifying Event." Applying strict scrutiny, the Court concluded that the Code was unconstitutional because "temporary directional signs are 'no greater an eyesore,'" than ideological or political ones so as to be narrowly tailored to the government's interest in preserving aesthetics. *Id.* at 2231. The Court found that the Code was also not narrowly tailored to the government's interest in traffic safety because the Town had "not shown that limiting

temporary directional signs is necessary to eliminate threats to traffic safety, but that limiting other types of signs is not." *Id.* at 2232.

Since *Reed*, the Third Circuit Court of Appeals has not decided whether *Rappa* remains good law. *See, e.g. Free Speech Coal., Inc. v. AG United States*, 825 F.3d 149, 161 (3d Cir. 2016) (determining that "we need not reach the issue of whether the secondary effects doctrine survives *Reed* because this is not a secondary effects case"); *Bruni v. City of Pittsburgh*, 824 F.3d 353, 364 (3d Cir. 2016) (concluding, "we need not consider the impact of *Reed* because the Complaint presents a viable free speech challenge to the buffer-zone Ordinance under the lower standard of scrutiny to which a content-neutral restriction on speech is subject"). It is also not necessary for this Court to make that determination at this early stage of the proceedings because one of the Interchange Prohibition exemptions, [10] at the least, is subject to the context-sensitive analysis, which demands that the exemption be narrowly tailored to serve the state interest. Reading the facts in the light most favorable to Adams and considering only the pleadings at the motion to dismiss stage, this Court concludes that Adams has sufficiently stated a First Amendment challenge to the Interchange Prohibition to proceed to discovery.

      **C.**      **The Interchange Prohibition is not unconstitutionally vague, nor has PennDOT been given unbridled discretion in its enforcement, because it provides fair notice of where signs may be erected along highways.[11]**

Adams claims that the Interchange Prohibition is unconstitutionally vague because it fails to provide persons of ordinary intelligence fair notice of where outdoor advertising can and cannot be erected along the highway, and also because the Act authorizes arbitrary enforcement and affords PennDOT unlimited discretion, both of which Adams claims are evidenced by

---

[10]      Official signs.

[11]      To the extent Adams's vagueness challenge also pertains to the Act's lack of deadlines upon which PennDOT has to approve or deny a permit application, this issue is addressed in the next section.

PennDOT's varying interpretations of the Interchange Prohibition. Adams asserts both a facial challenge and an as-applied challenge.

"A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). In deciding whether a statute is unconstitutionally vague, the court must consider the regulations purporting to construe the statute in addition to the statute itself. *See United States Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers*, 413 U.S. 548, 574-75 (1973) (rejecting a challenge to a statute as unconstitutionally vague and overbroad after considering the statute and the regulations construing the statute). "There is no statute or regulation imaginable that does not require some degree of interpretation by the agency charged with its enforcement. The First Amendment requires only that the regulation give the agency sufficient standards to apply in determining whether to issue a permit." *Parks v. Finan*, 385 F.3d 694, 699 (6th Cir. 2004) (finding that the statute's standards were not so vague as to engender content-based favoritism). "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) ("The power of an administrative agency to administer a congressionally created . . . program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress.").

Here, the Act provides: "[t]he secretary is authorized to promulgate rules and regulations governing outdoor advertising devices and such rules and regulations shall contain the criteria set forth under section 5 of this act. . . ." 36 P.S. § 2718.106. Pursuant to this authority, PennDOT issued the 1997 strike-off letter. Although the interpretation announced in this letter differed from an earlier interpretation by PennDOT, PennDOT explained that the reason it changed its interpretation was based on two superseding Pennsylvania court opinions. *See* Am. Compl. Ex. B. This action was therefore not arbitrary or capricious. *See UA Theatre Circuit v. Twp. of Warrington*, 316 F.3d 392, 399 (3d Cir. 2003) (explaining that "'only the most egregious official conduct can be said to be arbitrary in the constitutional sense'" and stating that this abuse of power is one that "shocks the conscience" (quoting *County of Sacramento v. Lewis*, 523 U.S. 833 (1998) and *Rochin v. California*, 342 U.S. 165 (1952))). Also, for the reasons discussed below, this interpretation is consistent with the Act itself and will be given controlling weight. *See Chevron*, 467 U.S. at 843-44. The 1997 strike-off letter is therefore pertinent to this Court's vagueness analysis, and Adams's suggestion that the Court may not consider this letter is simply incorrect. *See United States Civil Serv. Comm'n*, 413 U.S. at 574-75.

After considering the first way a statute can be impermissibly vague: "if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," *Hill*, 530 U.S. at 732, this Court finds that the Act at issue here, especially in light of the 1997 strike-off letter, is not unconstitutionally vague. The Interchange Prohibition clearly states that "no structure may be erected adjacent to or within five hundred feet of an interchange or safety rest area. . . ." 36 P.S. § 2718.105(c)(2)(i). PennDOT then explained in the 1997 strike-off letter that 500-feet zone applies to "signs on both sides of the controlled highway." *See* Am. Compl. Ex. B. In light of both documents, any applicant of reasonable intelligence has

been on notice for the last twenty years that the Interchange Prohibition applies to "signs on both side of the controlled highway." *See id.*; Romualdo P. Eclavea, Annotation, *Supreme Court's Application of Vagueness Doctrine to Noncriminal Statutes or Ordinances*, 40 L. Ed. 2d 823 (2nd 2012) ("[A] noncriminal statute is not unconstitutionally vague where it is set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with."). In light of the 1997 strike-off letter, there is also no question that Adams was aware that its billboard at the proposed location would violate the Interchange Prohibition.

Adams's vagueness challenge also fails under the second possibility identified in *Hill*: the Act "authorizes or even encourages arbitrary and discriminatory enforcement." *See id.* Nothing in the Act can be construed as authorizing or encouraging arbitrary enforcement.[12] Instead, PennDOT, through the 1997 strike-off letter, has clearly identified its method of measuring whether a sign is within 500 feet of an interchange or safety rest area. *See Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 393 (3d Cir. 2010) (rejecting a vagueness challenge because "the Zoning Board has outlined in its decisions as the framework for determining whether a sign with an advertising aspect can still be classified as an Identification Sign"). Adams does not allege, nor is there anything to suggest that PennDOT has applied the Interchange Prohibition differently to any applicants since 1997. Rather, Adams's vagueness challenge and unlimited discretion argument is based on the fact that approximately twenty years ago PennDOT changed its interpretation of the 500-feet spacing requirement. This argument is not persuasive. *See Mannix v. Phillips*, 619 F.3d 187, 200-01 (2d Cir. 2010) (determining that a change in the interpretation of a statute does not mean that the statute is necessarily unconstitutionally vague). If accepted, Adams's argument would lead to an absurd result because any federal statute over

---

[12]     *But see* section D below.

which there is a circuit split in an interpretation would necessarily be unconstitutionally vague. *See United States v. Kernell*, 667 F.3d 746, 754 (6th Cir. 2012) (concluding that "the fact that different courts have interpreted a statute differently does not make the statute vague—if that were true, a circuit split over the interpretation of a criminal statute would by definition render the statute unconstitutional").

Moreover, a "noncriminal statute will be upheld by the Supreme Court against an attack on the ground of vagueness where an appropriate construction of the statute by a state court has removed such alleged vagueness." Romualdo P. Eclavea, Annotation, *Supreme Court's Application of Vagueness Doctrine to Noncriminal Statutes or Ordinances*, 40 L. Ed. 2d 823 (2nd 2012). Here, such an interpretation was made by the Commonwealth court in *George Wash. Motor Lodge Co. v. Commonwealth, Dep't of Transp. See* 118 Pa. Commw. 552, 555, 545 A.2d 493, 494 (1988) (construing the various portions of the Act and concluding that "[t]here is no inconsistency in requiring the measurement of distance between signs to be determined only on one side of the way and measuring the distance between a sign and any intersection no matter where the location"). *See also Kegerreis Outdoor Adver. Co. v. DOT*, 157 A.3d 1033, 1039 (Pa. Commw. Ct. 2017) (upholding PennDOT's interpretation of how to measure the 500-feet spacing limitation in the Interchange Prohibition). This Court finds the Commonwealth courts' construction of the Interchange Prohibition, which was the same as PennDOT's interpretation announced in the 1997 strike-off letter, to be proper under the statute. Contrary to Adams's claim, this interpretation of the Interchange Prohibition is not inconsistent with 67 Pa. Code. § 445.4 because that regulation addresses only the "**Spacing of signs**." *See* 67 Pa. Code § 445.4(2)(v) (emphasis in original). Rather, this interpretation is consistent with the purposes of the Act. *See City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) (recognizing that

billboards "take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation"). In *Martin Media*, the court explained that the Interchange Prohibition is intended "to control the proximity of certain-size signs at the exits from high-speed highways where vehicles are in the process of maneuvering to change directions while reducing speed, so that the distraction such signs would create for the exiting operator would be greatly reduced or diminished, if not eliminated." *Martin Media v. Department of Transportation*, 700 A.2d 563, 567 (Pa. Commw. 1997), *appeal denied*, 555 Pa. 736, 725 A.2d 184 (Pa. 1998). Because a driver on U.S. Route 22 could be just as easily distracted by a billboard on the opposite side of U.S. Route 22 as he or she could be from a billboard on the same side of the highway, applying the 500-feet spacing requirement to structures on both side of the highway fits with this purpose. As with the 1997 strike-off letter, these Commonwealth court opinions removed any possible vagueness from the Act. Adams's vagueness challenge regarding the 500-feet spacing requirement in the Interchange Prohibition is therefore dismissed.

> **D.** **Adams has stated First Amendment claims based on the absence of any deadlines in the Act and the delay it experienced before its sign application was decided.**

Citing to the First and Fourteenth Amendments,[13] Adams claims that the lack of deadlines in the Act dictating how long PennDOT has to respond to a permit application results in an unlawful restraint on free speech. Adams's cites *FW/PBS*[14] to support its claim that a statutory scheme, such as the Act, "that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech." Resp. Mot. 12 (quoting

---

[13] Adams's substantive due process claims are addressed in the next Section.
[14] *FW/PBS, Inc. v. Dallas*, 493 U.S. 215 (1990) (discussing the procedural safeguards outlined by *Freedman v. Maryland*, 380 U.S. 51, 58 (1965), to ensure expeditious decision-making by the board enforcing a censorship statute).

*FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227 (1990)).  Richards replies that *FW/PBS* is not applicable because it applied to content-based prior restraints, but that the Act at issue here is content-neutral.  *see* Reply 3 (citing *Thomas v. Chi. Park Dist.,* 534 U.S. 316, 322-23 (2002) ("We have never required that a content-neutral permit scheme regulating speech in a public forum adhere to the procedural requirements set forth in *Freedman*.")).  Richards also asserts that even if *FW/PBS* did apply, the United States Supreme Court modified the rule announced in *FW/PBS* and now requires only the availability of "ordinary judicial review."  *Id.* (quoting *City of Littleton, Colorado v. Z.J. Gifts D-4, L.L.C.*, 541 U.S. 774 (2004)).  This Court rejects both of Richards's arguments and, applying the requirements in *FW/PBS*, finds that Adams has stated a claim for relief.

Richards's first argument is unavailing because, for the reasons set forth above, the Act is not entirely content-neutral.  Richards's second assertion is also unpersuasive because the Supreme Court in the *City of Littleton* addressed only one of the three safeguards required by *Freedman*.  The Court clarified what it meant by the third safeguard of a "prompt final judicial decision."  *See City of Littleton*, 541 U.S. at 779-786.  The Court did not, however, eliminate the other two required safeguards of "(1) strict time limits leading to a speedy administrative decision and minimizing any 'prior restraint'-type effects" and "(2) burden of proof rules favoring speech."  *Id.* at 779[15] (citing *Freedman*, 380 U.S. at 58-59).  Considering the additional requirement of "strict time limits" and reading the allegations of the instant Amended Complaint in the light most favorable to Adams, this Court finds that Adams has stated a claim under the First Amendment based on the absence of any deadlines in the Act (facial challenge).  *Compare Nittany Outdoor Adver., LLC v. Coll. Twp.*, 22 F. Supp. 3d 392, 411 (M.D. Pa. 2014) (holding

---

[15]     The statute at issue in *City of Littleton* set "forth time limits (typically amounting to about 40 days) within which city officials must reach a final licensing decision."  *Id.* at 776.

that the Township's Sign Ordinance was "unconstitutional for failing to specify a limitation on the time within which the Township will grant or deny a sign permit application"), *with Riel v. City of Bradford*, 485 F.3d 736, 756-57 (3d Cir. 2007) (upholding a statute's constitutionality because it provided specific deadlines for action on any application).  For these same reasons, this Court finds Adams's First Amendment claim that his rights were violated based on the one-year delay before PennDOT acted on its application to be sufficient at this early stage of the proceedings to allow him to proceed to discovery.  *See Mitchell v. Comm'n on Adult Entm't Establishments*, 764 F. Supp. 928, 939 (D. Del. 1991) (finding that although the statute was facially valid because it provided a time limit for the commission to decide a license application, the plaintiff's First Amendment rights were violated because the commission's failure to take action prevented the plaintiff from appealing the denial of a license).

No judicial determination is made at this stage of the proceedings as to whether the Act is in fact unconstitutional.  PennDOT may have enacted additional regulations and provided specific guidance, which when read in conjunction with the Act, would not offend the constitution.  Without the benefit of additional evidence, this Court is also unable to determine the reason for PennDOT's delay on Adams's application.

**E.      Adams's substantive due process claims, based on the absence of any deadlines in the Act and the one-year delay before its application was denied, are dismissed.**

Adams claims that the lack of deadlines in the Act specifying time limits for PennDOT to act upon permit applications violates due process.  Richards disputes this claim, asserting that the "alleged administrative delays do not even implicate due process concerns, because they do not meet the 'shocks the conscience' test."  *See* Mot. 14 n.8.

Richards's argument is only partially convincing because the "shocks the conscience" test applies only to substantive due process claims for non-legislative actions. *See Cnty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 169 (3d Cir. 2006) (distinguishing between legislative action and executive action in a substantive due process challenge); *Adhi Parasakthi Charitable v. Twp. of W. Pikeland*, 721 F. Supp. 2d 361, 379 (E.D. Pa. 2010) ("In order for executive action to give rise to a Substantive Due Process claim, the plaintiff must establish that the action 'shocks the conscience.'" (citing *United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 399-400 (3d Cir. 2003))). However, Adams's as-applied substantive due process claim is premature[16] and must be dismissed regardless of the governing standard. *See Cnty. Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 164 (3d Cir. 2006) (concluding that the finality rule bars as-applied substantive due process claims by property owners who have challenged the denial of a permit by an initial decision-maker but failed to take advantage of available, subsequent procedures); *Taylor Inv., Ltd. v. Upper Darby Twp.*, 983 F.2d 1285, 1292 (3d Cir. 1993) (holding that before the court can determine whether an agency's application of an ordinance is arbitrary and capricious, the agency must be given an opportunity to reach a final decision).

PennDOT's Highway Beautification Manual provides that when a sign application is denied, the applicant may file an appeal requesting an administrative hearing. *See* Pub. 581 § 2.11(1) (Sep. 2017 ed.). After the hearing, the Hearing Officer issues a proposed report and order, exceptions to which may be filed by the Secretary of Transportation, and only after exceptions are ruled upon, or if no exceptions are filed, will the decision become final. *Id.* at §

---

[16]     *Felmeister v. Office of Attorney Ethics, Div. of N.J. Admin. Office of Courts*, 856 F.2d 529, 535 (3d Cir. 1988) (holding that "considerations of ripeness are sufficiently important that we are required to raise the issue sua sponte even though the parties do not").

2.11(8).  At the time the instant action, as well as the Amended Complaint, were filed PennDOT

had not even ruled on Adams's permit application.  Further, although PennDOT has since denied

the application, Adams appealed the denial and requested a stay of the administrative

proceedings.  *See* Cummings Dec. ¶¶4-6, ECF No. 15-3.  Accordingly, there is no final decision

on Adams's application, and its as-applied substantive due process claim is barred by the finality

rule.  This claim is dismissed without prejudice.

On the other hand, Adams's substantive due process claim presenting a facial challenge

to the Act, based on the absence of deadlines, is not barred by the finality rule.  *See Cnty.*

*Concrete Corp.*, 442 F.3d at 164 (holding that the finality rule does not apply to facial attacks on

a statute or facial substantive due process claims).  But the claim is nevertheless dismissed

because "a legislative act will withstand substantive due process challenge if the government

identifies the legitimate state interest that the legislature could rationally conclude was served by

the statute."  *Id.* at 169 (internal citations omitted).  In light of the purposes specified in the Act

itself, *see* 36 P.S. § 2718.102, as well as the purposes recognized by numerous courts, *see, e.g.*

*Martin Media*, 700 A.2d at 567 (holding that the Interchange Prohibition is intended "to control

the proximity of certain-size signs at the exits from high-speed highways where vehicles are in

the process of maneuvering to change directions while reducing speed, so that the distraction

such signs would create for the exiting operator would be greatly reduced or diminished, if not

eliminated"), this Court finds that Adams has failed to state a facial-challenge substantive due

process claim and the claim is dismissed.

**E.      Adam's equal protection claim is dismissed as premature.**

Adams alleges that it was not given the same protection as others similarly situated and

was therefore denied equal protection of law.  For the reasons set forth above dismissing

Adams's as-applied substantive due process claim as premature, its equal protection claim is also barred by the finality rule. *See Cnty. Concrete Corp.*, 442 F.3d at 164 (concluding that the finality rule bars equal protection claims by persons that failed to utilize administrative remedies). The claim is dismissed without prejudice.[17]

> ### F. Venue is not transferred to the Middle District of Pennsylvania for continued litigation on the remaining claims.

Richards asserts that if this case moves forward, venue should be transferred to the Middle District of Pennsylvania. In support of this request, Richards argues that in the billboard application, Adams was directed to file any appeal with PennDOT's main office in Harrisburg, Pennsylvania, and that Richards and PennDOT are located in the Middle District of Pennsylvania. Richards asserts that Adams's only connection to the Eastern District is the location of its proposed billboard, but that its constitutionality challenge to the Interchange Prohibition of the Act is not unique to the proposed billboard, and that challenges to state-wide policy should be brought in the venue for the state capitol (Middle District). Adams responds that even if venue is proper in the state capital, it is not improper in the Eastern District of Pennsylvania due to the location of its proposed sign.

Venue of all civil actions brought in federal district courts is governed by 28 U.S.C. § 1391. Section 1391(b) provides:

> A civil action may be brought in—

---

[17] Because the claim is premature, this Court will not rule on its merits. Nevertheless, the Court advises Adams to review applicable law before deciding whether to refile this claim after completing PennDOT's administrative procedures. *See, e.g. Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 394 (3d Cir. 2010) (finding that the plaintiff had "clearly failed to establish that it is similarly situated to those entities whose signs have been approved"); *McClure v. City of Harrisburg*, No. 1:14-CV-0958, 2014 U.S. Dist. LEXIS 137085, at *17-18 (M.D. Pa. Sept. 29, 2014) (dismissing an equal protection claim because the plaintiff's only example of disparate treatment involved an individual who was not sufficiently similar to him).

> (1)   a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
> (2)  a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
> (3)  if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b) (2011).  "It is important, perhaps most important, to consider the nature of the litigation in determining whether 'substantial' events or omissions took place in a particular district."  *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009).  *See also Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994).

The claims remaining are Adams's contention that the Act fails First Amendment scrutiny, its facial challenge to the Act under the First Amendment based on the absence of any time restrictions, and Adams's as-applied challenge under the First Amendment based on the delay before its application was decided.  To the extent that Adams challenges the constitutionality of the Act itself, a substantial portion of the events took place in the Middle District of Pennsylvania where the law was enacted.  *See Chester v. Beard*, No. 07-4742, 2008 U.S. Dist. LEXIS 43087, at *22-26 (E.D. Pa. May 29, 2008) (concluding that "where plaintiffs challenge state-wide policies, and not merely the actions of state officials in a single county, venue is proper pursuant to Section 1391(b)(2) in the district where those policies are developed").  However, because Adams also asserts an "as applied" challenge, a substantial portion of the events giving rise to Adams's claims occurred in the Eastern District of Pennsylvania, where the proposed billboard would be erected and Adams's freedom of speech was allegedly suppressed.  *See Kalman*, 646 F. Supp. 2d at 742 (holding that where the litigation involves a First Amendment challenge, a "plaintiff suing because his freedom of expression has been unjustifiably restricted by a state statute suffers harm only where the speech would have

taken place, as opposed to the district in which the statute was written and the decision to restrict this plaintiff's speech was made").  Because the harm caused by suppression of one's First Amendment rights "is clearly 'substantial,'" *Kalman*, 646 F. Supp. 2d at 742, this Court finds that a substantial portion of the events giving rise to Adams's claims occurred in both judicial districts.

"Venue can be appropriate in more than one district."  *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. 16-3103, 2017 U.S. Dist. LEXIS 25255, at *21-22 (E.D. Pa. Feb. 23, 2017) (citing *Cottman Transmission Sys.*, 36 F.3d at 294).  "If the selected district's contacts are 'substantial,' it should make no difference that another's are more so, or the most so."  *Neopart Transit, LLC v. Mgmt. Consulting, Inc.*, No. 16-3103, 2017 U.S. Dist. LEXIS 25255, at *21-22 (E.D. Pa. Feb. 23, 2017) (citing *Leone v. Cataldo*, 574 F. Supp. 2d 471, 483 (E.D. Pa. 2008) (quoting David D. Siegal, Commentary on the 1988 and 1990 Revisions of Section 1391, Subdivision (a), Clause (2), 28 U.S.C.A § 1391 (1993))).  *See also Wilson v. Pa. State Police Dep't*, CIVIL ACTION NO. 94-6547, 1995 U.S. Dist. LEXIS 3788, at *4 (E.D. Pa. Mar. 24, 1995) (holding that "while cases challenging state-wide polices may have closer ties with the district where such policies were adopted, such ties do not negate the propriety of venue in another district where other substantial events may have occurred").

What does make a difference is the eleven factors discussed in *In re Amendt*, which balance fairly equally in the instant action.  The first factor (plaintiff's choice of forum) weighs in favor of keeping venue, while the second factor (defendant's choice of forum) weighs in favor of transferring venue to the Middle District of Pennsylvania.  The third factor weighs slightly against transfer because the claim rose in the Eastern District of Pennsylvania where Adams's proposed billboard would be located; however, the Court recognizes that the facial challenge

could also be considered to have arisen where the law was enacted. The fourth and fifth factors also balance relatively equally because while Adams is located in this District, Richards is located in the Middle District, and it is likely[18] that witnesses will be located in both districts. The sixth factor contributes little to the analysis because while the books and records are likely located in the Middle District, they can be produced in the Eastern District as well. *See Holder v. Suarez*, No. 3:CV-14-1789, 2015 U.S. Dist. LEXIS 38810, at *9 (M.D. Pa. Mar. 25, 2015) (concluding that "the location of books and records is a relevant consideration only to the extent that they could not be produced in the alternative forum, and neither party suggests that these records could not be produced in either forum"). Next, the declaratory judgment pertaining to Adams's proposed billboard would be enforced in this District, but the declaratory relief sought would have consequences state-wide, such that the seventh factor is neutral. There do not appear to be any practical considerations that could expedite or simplify trial, and the parties do not address the level of court congestion in the two forums so the eighth and ninth factors are also neutral to the transfer analysis. *See E'Cal Corp. v. Office Max, Inc.*, No. 01-3281, 2001 U.S. Dist. LEXIS 15868, at *13 (E.D. Pa. Sept. 6, 2001) (reasoning that "there is little significant difference in enforcing a judgment in one federal forum than in another" (citing 17 James Wm. Moore et al., Moore's Federal Practice § 111.13(1)(i), (3d ed. 1997))). Both districts have local interests, the Eastern District because this is where the proposed billboard would be located and where Adams's claims his free speech has been suppressed, and the Middle District because the case involves the constitutionality of a state-wide law enacted in the capitol that Penn-DOT has been instructed to enforce. Finally, the eleventh factor is also neutral because both forums are in the Commonwealth of Pennsylvania and the judges are equally familiar with the applicable law.

---

[18]    Richards, who bears the burden of establishing why venue should be transferred has failed to produce any evidence in this regard, nor has Adams.

*See Holder*, 2015 U.S. Dist. LEXIS 38810, at *10-11 (concluding that the public policies of the courts in the Middle and Eastern Districts of Pennsylvania are the same and that the judges in each District are familiar with the applicable state law).  Overall, the factors balance fairly equally.  Considering that the "burden of establishing the need for transfer ... rests with the movant," *Jumara*, 55 F.3d at 879-80, this Court finds that Richards has not met this burden and the motion to transfer venue is denied.

## V.       CONCLUSION

In light of the exclusions mentioned in the Interchange Prohibition, Adams's claim that the Act fails First Amendment scrutiny sufficiently states a claim.  Adams has stated a facial challenge to the Act under the First Amendment based on the absence of any time restrictions for PennDOT to act on sign applications.  At this stage of the proceedings, Adams's as-applied challenge under the First Amendment based on the one-year delay before PennDOT decided his application is also sufficient to survive a motion to dismiss.  However, Adams's vagueness challenge regarding the 500-feet spacing requirement in the Interchange Prohibition is dismissed.  Adams's substantive due process claims are also dismissed, but the as-applied challenge is dismissed without prejudice as premature.  Similarly, Adams's equal protection claim is dismissed without prejudice as premature.  Because a substantial portion of the events giving rise to Adams's claims occurred in this District, namely the alleged suppression of free speech, Richards's request to transfer venue is denied.

A separate order follows.

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge