UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ADAMS OUTDOOR ADVERTISING          :
LIMITED PARTNERSHIP,               :
          Plaintiff,         :
                         :
         v.                 :     No. 5:17-cv-01253
                         :
PENNSYLVANIA DEPARTMENT OF         :
TRANSPORTATION;[1] and             :
LESLIE S. RICHARDS,                :
            Defendants.        :

_____

**O P I N I O N**
**Plaintiff's Motion for Reconsideration, ECF No. 27 - Denied**
**Plaintiff's Motion for Summary Judgment, ECF No. 30 – Granted in part, Denied in part**
**Defendant's Motion for Summary Judgment, ECF No. 31 – Granted in part, Denied in part**

**Joseph F. Leeson, Jr.**                                   **June 5, 2018**
**United States District Judge**

## I.    INTRODUCTION

       Plaintiff Adams Outdoor Advertising Limited Partnership ("Adams"), whose Amended

Complaint focused on the Interchange Prohibition,[2] challenges the constitutionality of

Pennsylvania's Outdoor Advertising Control Act of 1971, 36 P.S. §§ 2718.101 – 2718.115 (the

"Act"). *See also* Pa. Code §§ 445.1 – 445.9. On February 9, 2018, this Court dismissed

Adams's vagueness challenge regarding the 500-feet spacing requirement in the Interchange

Prohibition, as well as Adams's substantive due process and equal protection claims.[3] The

claims that survived the Motion to Dismiss are Adams's claim that the Interchange Prohibition

---

[1]    The Pennsylvania Department of Transportation ("PennDOT") was terminated as a
Defendant on August 4, 2017.

[2]    *See* 36 P.S. § 2718.105(c)(2)(i).

[3]    Adams's substantive due process as-applied challenge and equal protection claim were
dismissed without prejudice as premature.

fails First Amendment scrutiny, the facial challenge to the Act under the First Amendment based on the absence of any time limits for PennDOT to act on applications for sign permits, and Adams's as-applied challenge under the First Amendment based on the one-year delay before PennDOT decided its permit application. Adams has filed a Motion for Reconsideration asking this Court to reconsider its ruling dismissing Adams's vagueness challenge. The parties have also filed cross-motions for summary judgment.

For the reasons set forth below, because Adams does not cite any justification for reconsideration of the decision on the Motion to Dismiss, the Motion for Reconsideration is denied.

Summary judgment is granted in Adams's favor based on the lack of time limits in the Act, and the permit requirement in 36 P.S. § 2718.107 is declared unconstitutional. The need for the existence of time limits in government issuance or denial of permit applications is based on the decision of the United States Supreme Court in *Freedman v. Maryland*, 380 U.S. 51 (1965).

Summary judgment as to Adams's constitutional challenge to the Interchange Prohibition and the exemptions in §§ 2718.104 and § 2718.105(c)(2)(iv) is granted in Richards's favor.

Adams's as-applied challenge to the Act based on the one-year delay before its application was decided is now moot.

## II.    UNDISPUTED FACTS[4]

The Act was passed in 1971 to "control the erection and maintenance of outdoor advertising devices in areas adjacent to the interstate and primary systems." 36 P.S. § 2718.102.

---

[4]    The material facts in this case are largely undisputed and are taken directly from the parties' Statements of Undisputed Material Facts. *See* Richards's Stmt Facts, ECF No. 31-2; Adams's Resp., ECF No. 34 (objecting only to the legal arguments in paragraphs 15 to 18 of Richards's Statement of Undisputed Material Facts, to the facts alleged in paragraphs 23, 47, and 48 as contrary to the witness's deposition testimony, and to paragraphs 49 and 50 as incomplete).

The purpose of the Act is to "assur[e] the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the national policy to protect the public investment in the interstate and primary systems; to promote the welfare, convenience and recreational value of public travel; and to preserve natural beauty." *Id.* The Secretary of PennDOT is tasked with enforcing the Act and promulgating rules and regulations governing outdoor advertising devices. 36 P.S. §§ 2718.106 - 2718.107. The current Secretary of PennDOT is Defendant Leslie S. Richards.

Section 105(c)(2) of the Act contains restrictions, which must be "strictly adhere[d] to" by the secretary, on the spacing of outdoor advertising signs. 36 P.S. § 2718.105(a), (c)(2). For sign structures "outside the boundaries of cities of all classes and boroughs, no structure may be erected adjacent to or within five hundred feet of an interchange or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way." 36 P.S. § 2718.105(c)(2)(i) ("Interchange Prohibition"). Since 1997, PennDOT has interpreted and applied the 500-feet spacing restriction in the Interchange Prohibition to both sides of a divided highway, meaning that a structure across from an interchange would be considered nonconforming if within 500 feet of the interchange. *See* Am. Compl. Ex. B, ECF No. 10 ("1997 Strike-Off Letter"). The Section further provides that "for purposes of determining spacing requirements," "[o]fficial[5]

---

[5]     "Official signs" are defined as including "signs and notices pertaining to natural wonders, scenic and historical attractions, which are required or authorized by law." 23 U.S.C. § 131(c). *See also* 23 C.F.R. 750.105(a) (defining official signs as "[d]irectional or other official signs or notices erected and maintained by public officers or agencies pursuant to and in accordance with direction or authorization contained in State or Federal law, for the purpose of carrying out an official duty or responsibility").

and 'on premise' signs,[6] as defined in section 131(c) of Title 23, United States Code, shall not be

counted nor shall measurements be made from them."  36 P.S. § 2718.105(c)(2)(iv).

Adams "is in the business of off-premise signs commonly referred to as billboards, . . .

[and] of selling the space on those off-premise signs to advertisers."  Lois Arciszewski[7] Dep.

20:6-8, 24 – 21:1, ECF No. 31-3.  "An off-premise sign by definition advertises a product or

service that's not located on the land parcel where the sign structure is located."  *Id.* at 20:15-18.

The advertisements could be of commercial or non-commercial messages.  *Id.* 21:2-13.  At

times, Adams constructs billboards but may also hire contractors to construct the billboards.  *Id.*

at 22:2-10.

On March 8, 2016, Adams submitted to PennDOT an application to construct an off-

premise sign on the east bound side of State Route 22 in Hanover Township, Northampton

County, Pennsylvania.  Arciszewski Dep. Ex. 3.  On the west bound side of Route 22, across

from the proposed sign location, is an interchange.  *Id.* at 58:17-20.  The proposed sign would be

within 500 feet of the interchange on the opposite side of Route 22.  *Id.* at 58:13-20.  Adams

acknowledges that the location of its proposed sign would be nonconforming with the Act, as

interpreted by the 1997 Strike-Off Letter.  *Id.* at 61:8-23.

Adams had acknowledged the nonconforming nature of its sign in July 2014, but

contacted PennDOT in early 2015, prior to filing the application, to discuss the proposed sign.

*Id.* at 62:10 – 69:4.  In March 2015, PennDOT advised Adams that the proposed location would

not be permitted.  *Id.* at 64:19 - 65:6.  Nevertheless, Adams continued to engage in discussions

---

[6]	On-premise signs are "signs, displays, and devices advertising the sale or lease of property upon which they are located."  23 U.S.C. § 131(c).  *See also* 23 C.F.R. 750.105(a) (defining "on-premise signs" as "[s]igns not prohibited by State law which are consistent with the applicable provisions of this section and § 750.108 and which advertise the sale or lease of, or activities being conducted upon, the real property where the signs are located").

[7]	Lois Arciszewski is a Real Estate Manager for Adams.  Arciszewski Dep. 7:10-14.

with PennDOT, which maintained its position that the sign location was nonconforming.  *Id.* at 65:3 – 69:5.  Adams threatened to file legal action, sending PennDOT a draft of the complaint later filed in the instant action, but then submitted the permit application to PennDOT on March 8, 2016.  *Id.*

On May 9, 2016, PennDOT sent a letter to the Chief of Surveys requesting a survey of the proposed sign location.  *See* Stephen R. Kovatis Dec. Ex. B, ECF No. 31-14.  On May 15, 2016, PennDOT conducted a site visit, with both PennDOT and Adams representatives present. *Id.* at 55:9 - 57:8.  The next communication between PennDOT and Adams was on February 3, 2017, when Adams sent an e-mail to PennDOT inquiring into the status of the application.  *Id.* at 62:3-21.  On February 6, 2017, PennDOT requested additional information related to the application, which Adams promptly provided.  *Id.* at 75:16-23.  The survey was completed on March 6, 2017, and the final drawing was completed on April 24, 2017.  The same day, April 24, 2017, PennDOT officially denied the application because the proposed sign would be located within 500 feet of an interchange in violation of the Interchange Prohibition.  Arciszewski Dep. at Ex. 4.

Adams timely filed an administrative appeal of the denial.  *Id.* at 76:8-24.  Shortly thereafter, Adams requested a stay of the administrative proceedings due to the pendency of the instant action, which was initiated on March 20, 2017.  Kovatis Dec. Ex. C; ECF No. 1.

## III.    STANDARDS OF REVIEW

### A.    Motion for Reconsideration

 "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985).  "Accordingly, a judgment may be altered or amended if the party seeking reconsideration

shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). "It is improper on a motion for reconsideration to ask the Court to rethink what [it] had already thought through--rightly or wrongly." *Glendon Energy Co. v. Borough of Glendon*, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993) (internal quotations omitted). "Because federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." *Continental Casualty Co. v. Diversified Indus.*, 884 F. Supp. 937, 943 (E.D. Pa. 1995).

### B.      Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 257.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to

the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.    ANALYSIS

After a decision on the Motion to Dismiss was entered, Adams filed a Motion for Reconsideration, asking this Court to reconsider its decision dismissing the constitutional vagueness challenge to the Act. Shortly after this Motion was ripe for consideration, the parties completed discovery. They have since filed cross-motions for summary judgment.

In its Motion for Summary Judgment, Adams argues that it is entitled to summary judgment because: (1) the Act is a content-based restriction on speech that violates Adams's First Amendment rights, as applied through the Fourteenth Amendment, because the restrictions contained in the Interchange Prohibition do not further a compelling governmental interest and are not narrowly tailored; (2) the Act, on its face, violates the First Amendment because it does not contain any deadlines for PennDOT to grant or deny sign permits; and (3) the Act, as-applied, violates the First Amendment because PennDOT's delay of over a year to respond to its permit application was unreasonable.

In its Motion for Summary Judgment, Richards contends: (1) Adams lacks standing to pursue a challenge to the on-premise sign exemption and the official sign exemption because Adams engages exclusively in the construction of off-premise signs and has suffered no constitutional injury from either of these exemptions; (2) the exemptions do not change the

content-neutrality of the Act, and the Act satisfies constitutional scrutiny; (3) there is no constitutional requirement that the Act, as a content-neutral regulation, provide a time limit for PennDOT to decide permit applications; and (4) Adams's as-applied challenge is moot because PennDOT has acted on its permit application and this Court cannot issue an injunction ordering PennDOT to take action that it has already taken.

**A.   There is no basis to reconsider this Court's decision dismissing Adams's vagueness challenge, and the Motion for Reconsideration is denied.**

In the Motion for Reconsideration, Adams does not assert that there was an intervening change in the controlling law, nor does it cite to any new evidence that was not available at the time of the opinion on the Motion to Dismiss.  Rather, Adams simply disagrees with this Court's decision to dismiss the constitutional vagueness challenge to the Act, and alleges that manifest injustice will result if reconsideration is not granted.  *But see Glendon Energy Co.*, 836 F. Supp. at 1122 (holding that it is not proper "on a motion for reconsideration to ask the Court to rethink what [it] had already thought through--rightly or wrongly").  Adams argues that this Court erred in relying on the Pennsylvania Commonwealth Court's opinion in *George Wash. Motor Lodge Co. v. Commonwealth, Dep't of Transp.*, 545 A.2d 493, 494 (Pa. Commw. 1988), because PennDOT determined in a Proposed Report in 1989 that the case was not controlling.  Adams also disagrees with this Court's reliance on *Kegerreis Outdoor Adver. Co. v. DOT*, 157 A.3d 1033, 1039 (Pa. Commw. Ct. 2017), asserting that the case decided the meaning of the term "interchange" under the Act, not the meaning of "main-traveled way" as it applies to a "divided highway."

After review, this Court concludes that Adams's arguments do not show any need to correct a clear error of law or fact, or that manifest injustice will result if reconsideration is not granted.  First, as to this Court's reliance on *George Wash. Motor Lodge Co.*, that case sets forth

the current[8] holding of the Pennsylvania Commonwealth Court regarding the constitutionality of PennDOT's interpretation of the Interchange Prohibition as applying to structures on both sides of the highway.[9]  *See George Wash. Motor Lodge Co.*, 545 A.2d at 554-59 (holding that PennDOT's interpretation of the Interchange Prohibition as requiring the measurement of the distance between a sign and any intersection to be determined "no matter where the location," whether on the same side or both sides of the main-traveled way, "was not erroneous").  Reliance thereupon was therefore proper.  Furthermore, this Court is not bound by PennDOT's interpretation of case law and, in light of the 1997 strike-off letter, not even PennDOT currently follows its reasoning in the 1989 Proposed Report.

Second, Adams's suggestion that this Court's reference to *Kegerreis Outdoor Adver. Co.* was in error is also without support.  This Court made one reference in its opinion to this case, as a "see also" citation to support its determination that the Commonwealth Court's construction of the Act in *George Wash. Motor Lodge Co.* removed any constitutional vagueness.  *See* Opn. 15. In *Kegerreis Outdoor Adver. Co.*, although the court was deciding whether the ramps at issue were "interchanges," the court reasoned that "the language of the 'Interchange Prohibition' itself provides guidance wherein it discusses the measurement of 500 feet . . . ."  *Kegerreis Outdoor Adver. Co*, 157 A.3d at 1040 (citing *George Washington Motor Lodge Co.*, 545 A.2d at 495). The court summarized the holding in *George Wash. Motor Lodge Co.* as: "rejecting applicant's interpretation of the 500 feet requirement in the 'Interchange Prohibition' as only applying to the side of the roadway from where the sign is visible and accepting DOT's interpretation of this requirement as applying to any and all exits or entrances from the sign."  *Id.*  It is clear from this

---

[8]    *See, e.g. Kegerreis Outdoor Adver. Co.*, 157 A.3d at 1040; *Joyce Outdoor Adver., LLC v. DOT*, 49 A.3d 518, 526 (Pa. Commw. Ct. 2012).

[9]    The language of the Interchange Prohibition that was at issue in *George Wash. Motor Lodge Co.* is identical to the language in the current version of the statute.

quotation that even though the court in *Kegerreis Outdoor Adver. Co.* was not addressing whether the Interchange Prohibition applies to ramps on both sides of a divided highway, the opinion in *George Wash. Motor Lodge Co.*, which did decide this specific issue, remains good law, which was the sole purpose of this Court's "see also" reference to *Kegerreis Outdoor Adver. Co.*.

Finally, Adams repeats its argument that the Act is unconstitutionally vague because PennDOT changed interpretations over the years and PennDOT's current interpretation is "in direct conflict with the plain meaning of the text of the statute." Adams's Mot. Reconsider. ¶ 9, ECF No. 27. Adams does not offer any new evidence to show that PennDOT's enforcement was arbitrary; rather, it merely seeks leave to conduct discovery to satisfy its claim. *Id.* at ¶ 13. But, a plaintiff is not entitled to conduct discovery where a "complaint is deficient under Rule 8." *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009); *see also Mann v. Brenner*, 375 F. App'x 232, 239-40 (3d Cir. 2010) ("A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a claim, and therefore may be decided on its face without extensive factual development."). Moreover, this argument is moot because discovery is now complete. It is clear that Adams disagrees with PennDOT's current interpretation of the Act, but asserting an unsupported constitutional claim in the United States District Court is not the proper means to seek redress. *See* 67 Pa. Code § 491.3; *Harbor Adver., Inc. v. DOT*, 6 A.3d 31, 32 (Pa. Commw. Ct. 2010) (considering the petitioner's challenge to PennDOT's regulatory interpretation in a petition for review). Furthermore, the mere disagreement with an agency's interpretation of an Act, or its changed interpretations over the years, does not state a vagueness claim. *See Mannix v. Phillips*, 619 F.3d 187, 200-01 (2d Cir. 2010) (determining that a change in the interpretation of a statute does not mean that the statute is necessarily unconstitutionally vague). For the reasons set forth

in the Opinion on the Motion to Dismiss, this Court concluded that Adams failed to show that the Interchange Prohibition either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits, or (2) authorizes or even encourages arbitrary and discriminatory enforce. *See Hill v. Colorado*, 530 U.S. 703, 732 (2000). Adams has not offered any reason to reconsider this determination.

The Motion for Reconsideration is denied.

### B. Summary judgment is entered in favor of Richards as to Adams's claim that the Interchange Prohibition is an unconstitutional restraint on free speech.[10]

As previously mentioned, Adams's claim that the Interchange Prohibition is unconstitutional because it restricts free speech in violation of the First Amendment survived the motion to dismiss stage. Although this Court previously concluded that the Interchange Prohibition is not unconstitutionally vague, it has not decided whether the regulation satisfies constitutional scrutiny. *See* Opn. 11-18.

In determining whether a law violates the First Amendment, the first step is to determine whether the statute is content-based or content-neutral. *See Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1053 (3d Cir. 1994). Adams argues that the Act is content-based in light of the allegedly content-based exemptions for official signs and on-premise signs contained in 36 P.S. §§ 2718.104 and 2718.105(c)(2)(iv). Richards asserts, however, that Adams lacks standing to challenge these exemptions and, regardless, that both the exemptions and the Act are content-neutral.

---

[10]     Adams's facial and as-applied challenges to the Act based on the lack of time limits are addressed in separate sections below.

For the reasons discussed below, this Court finds that these exemptions do not apply to the Interchange Prohibition; and the Interchange Prohibition is a content-neutral regulation that passes constitutional scrutiny.

> 1.    **The exemptions in 36 P.S. §§ 2718.104 and 2718.105(c)(2)(iv) do not apply to the Interchange Prohibition.**

The regulation containing the Interchange Prohibition, 36 P.S. § 2718.105(c)(2)(i), provides in total:

> Along the interstate system and limited access highways on the primary system, no two sign structures shall be spaced less than five hundred feet apart; and *outside the boundaries of cities of all classes and boroughs, no structure may be erected adjacent to or within five hundred feet of an interchange or safety rest area, measured along the interstate or limited access primary from the beginning or ending of pavement widening at the exit from or entrance to the main-traveled way.*

36 P.S. § 2718.105(c)(2)(i) (emphasis added). The italicized portion quoted above is the Interchange Prohibition. Subsection (c)(2) of § 2718.105 also contains the following exemption: "[o]fficial and 'on premise' signs, as defined in section 131(c) of Title 23, United States Code, shall not be counted nor shall measurements be made from them for purposes of determining spacing requirements." 36 P.S. § 2718.105(c)(2)(iv).

Based on the limited information before the Court at the motion to dismiss stage, this Court believed that the exemptions for official and on-premise signs in § 2718.105(c)(2)(iv) applied to the Interchange Prohibition. However, at that time, this Court was unaware that PennDOT had interpreted the exemptions in § 2718.105(c)(2)(iv) as pertaining only to the requirement that "no two sign structures shall be spaced less than five hundred feet apart," (the first part of 36 P.S. § 2718.105(c)(2)(i)), and having nothing to do with the Interchange Prohibition. Now, at this stage of the proceedings, the Court has determined that PennDOT's interpretation, which means that there are no exceptions to the Interchange Prohibition, is

consistent with the purposes of the Act because an on-premise sign may be as equally distracting to a motorist as an off-premise sign, especially at an interchange. *See Kegerreis*, 157 A.3d at 1038 ("The obvious purpose of [the Interchange P]rohibition is to protect the safety of the traveling public by reducing distractions to the operators of motor vehicles at significant decision points."); *Martin Media v. Dep't of Transp.*, 700 A.2d 563, 567 (Pa. Commw. 1997) (explaining the need to regulate signs "at the exits from high-speed highways where vehicles are in the process of maneuvering to change directions while reducing speed, so that the distraction such signs would create for the exiting operator would be greatly reduced or diminished, if not eliminated"), *appeal denied*, 725 A.2d 184 (Pa. 1998).

Significantly, PennDOT's interpretation that the exemptions in § 2718.105(c)(2)(iv) do not apply to the Interchange Prohibition is not new. In 1988, the Pennsylvania Commonwealth Court determined that PennDOT's interpretation is a viable alternative. *See George Wash. Motor Lodge Co.*, 545 A.2d at 496 (holding that there is "nothing plainly erroneous" about PennDOT's interpretation of § 2718.105(c)(2)(iv) as applying only to the requirement that signs be spaced 500 feet apart from one another, and not to the intersection regulation). Because this Court agrees and therefore gives PennDOT's interpretation controlling weight, *see Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 843-44 (1984) (holding that where a statute is ambiguous with respect to a specific issue, the court shall give controlling weight to an agency's interpretation unless it is "arbitrary, capricious, or manifestly contrary to the statute"), this Court concludes that the exemptions in § 2718.105(c)(2)(iv) do not apply to the Interchange Prohibition and do not support Adams's constitutional attack.[11]

---

[11] Adams benefitted from the fact that this Court did not make this determination at the motion to dismiss stage because it allowed Adams's claims to survive pre-discovery dismissal. *See* Opn. 11 ("Reading the facts in the light most favorable to Adams and considering only the

The exemptions in 36 P.S. § 2718.104 also do not apply to the Interchange Prohibition. Section 2718.104 lists nine categories of signs that are exempted from the restriction that no outdoor advertising device may be "erected or maintained . . . within six hundred sixty feet of the nearest edge of the right-of-way if any part of the advertising or informative contents is visible from the main-traveled way of an interstate or primary highway." The exempted sign categories include official signs, directional signs, and on-premise signs.[12] However, this section of the Act is wholly unrelated to the Interchange Prohibition. The exemptions contained therein therefore do not apply to the Interchange Prohibition and do not support Adams's constitutional attack.

**2. The Interchange Prohibition is a valid, content-neutral restriction of speech.**

Considering that the exemptions in § 2718.104 and § 2718.105(c)(2)(iv) do not apply to the Interchange Prohibition,[13] this Court finds that the Interchange Prohibition is content-neutral on its face. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015) (explaining that "the crucial first step in the content-neutrality analysis [is] determining whether the law is content neutral on its face"). The restriction that a sign not be erected within 500 feet of an interchange applies to all structures regardless of the speaker or of the views expressed. *See Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) (finding that the sign ordinance "is neutral -- indeed it is silent -- concerning any speaker's point of view"). There is no evidence that Richards or PennDOT has attempted to suppress certain viewpoints by enforcing the

---

pleadings at the motion to dismiss stage, this Court concludes that Adams has sufficiently stated a First Amendment challenge to the Interchange Prohibition to proceed to discovery.").

[12] Although the regulation does not specifically mention "on-premise signs," it exempts "[o]utdoor advertising devices advertising the sale or lease of the real property upon which they are located," *see* 36 P.S. § 2718.104(1)(ii), which falls into the definition of an on-premise sign, *see* 23 C.F.R. 750.105(a) (defining "on-premise signs" as "[s]igns . . . which advertise the sale or lease of . . . the real property where the signs are located").

[13] *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 494 n.5 (1982) ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any limiting construction that a state court or enforcement agency has proffered.").

Interchange Prohibition uneven-handedly.[14]  *See id.* (finding that there was "not even a hint of bias or censorship" in the city's enactment or enforcement of the ordinance regulating signs and that the ordinance was applied "in an evenhanded manner").  Also, there is no evidence that the Pennsylvania legislature enacted the Act to regulate certain types of speech because of disagreement with what the message conveys.  *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) ("The principal inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys.").  Rather, the stated purpose of the Act is to "assur[e] the reasonable, orderly and effective display of outdoor advertising while remaining consistent with the national policy to protect the public investment in the interstate and primary systems; to promote the welfare, convenience and recreational value of public travel; and to preserve natural beauty."  36 P.S. § 2718.102.  The purpose of the Interchange Prohibition "is to protect the safety of the traveling public by reducing distractions to the operators of motor vehicles at significant decision points."  *Kegerreis*, 157 A.3d at 1038.  These justifications have nothing to do with the sign's content, and the Interchange Prohibition therefore "satisfies the requirement that time, place, or manner regulations be content neutral."  *See Ward*, 491 U.S. at 791 ("A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others.").

---

[14]  Although Adams complains that PennDOT has changed its interpretation over the years as to whether the Interchange Prohibition restricts structures only on the same or on both sides of the highway, there is no evidence that it has applied the restriction differently to any applicants since 1997.  Also, there has been no suggestion that PennDOT changed its interpretation in order to suppress speech, and this Court previously concluded that the changed interpretation was neither arbitrary nor capricious. *See* Opn. 13 (concluding that "PennDOT explained that the reason it changed its interpretation was based on two superseding Pennsylvania court opinions" and that "[t]his action was therefore not arbitrary or capricious").

If a statute is content-neutral, meaning that it is "justified without reference to the content of the regulated speech," the State need only show that the regulation is "narrowly tailored to serve a significant governmental interest, and . . . leave[s] open ample alternative channels for communication of the information."[15] *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (quoting *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983)). The Interchange Prohibition satisfies this test.

The Commonwealth's interest in protecting the safety of motorists by reducing distractions at interchanges is significant.[16] *See City of Ladue v. Gilleo*, 512 U.S. 43, 48 (1994) (recognizing that billboards "take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation"); *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 509 (1981) (holding that "billboards are real and substantial hazards to traffic safety"). Further, this Court concludes that restricting the erection of billboards within 500 feet of an interchange or safety rest area is narrowly tailored to advance this interest. *See Taxpayers for Vincent*, 466 U.S. at 808 (concluding that by prohibiting the posting of signs on public property, "the City did no more than eliminate the exact source of the evil it sought to remedy:" visual clutter). Applying this restriction to both sides of a divided highway is also narrowly tailored because a billboard on the opposite side of a highway may be

---

[15] A statute that is content-based, on the other hand, is subject to the "most exacting scrutiny" and the State is required "to show that the 'regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end.'" *Boos v. Barry*, 485 U.S. 312, 321 (1988).

[16] In addition to the Commonwealth's interest in motorist safety, "[i]t is well settled that the state may legitimately exercise its police powers to advance esthetic values." *Taxpayers for Vincent*, 466 U.S. at 805 (concluding that the ordinance, which prohibited the posting of signs on public property, curtailed no more speech than was necessary to accomplish its purpose to advance esthetic values). "It is not speculative to recognize that billboards by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm.'" *Metromedia, Inc.*, 453 U.S. at 510.

as equally distracting to a motorist as a billboard on the same side of the highway. *See Metromedia, Inc.*, 453 U.S. at 493, 511 (holding that "the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics" and the ordinance, which imposed substantial prohibitions on the erection of outdoor advertising displays within the city, was not "broader than is necessary to meet its interests").[17] Finally, the Interchange Prohibition leaves ample alternative channels for communication, such as sign structures at least 501 feet away from an interchange or safety rest area and other types of media. *See Interstate Outdoor Adver., L.P. v. Zoning Bd. of Mount Laurel*, 706 F.3d 527, 535 (3d Cir. 2013) (concluding that the mere fact that billboards may not be erected on a particular section of the interstate does not mean that adequate alternative means of communication do not exist, such as "on-premise signs, internet advertising, direct mail, radio, newspapers, television, sign advertising, and public transportation advertising").

The Interchange Prohibition is therefore constitutional.[18]

**C.** **Adams does not have standing[19] to challenge the constitutionality of the exemptions in 36 P.S. § 2718.104 or in 36 P.S. § 2718.105(c)(2)(iv).**

---

[17]    The Court nevertheless struck down the city's ban because of its regulation of only off-premise signs, a distinction that is not at issue in the instant action.

[18]    Notably, the Interchange Prohibition is not nearly as restrictive as other sign ordinances that have withstood constitutional attack. *See, e.g., Taxpayers for Vincent*, 466 U.S. at 808 (finding a total prohibition of the posting of signs on public property to be constitutional); *Interstate Outdoor Adver., L.P.*, 706 F.3d at 534 (upholding a township-wide ban on billboards).

[19]    Adams's standing to challenge the Act with respect to the absence of time deadlines and alleged unconstitutional delay is not at issue, *see Taxpayers for Vincent*, 466 U.S. at 796-98 (explaining that there is an exception to the general standing requirements for a facial attack to a statute based on its overbreadth), and Adams's arguments on these grounds in opposition to the standing challenge are misplaced, *see Covenant Media of S.C., LLC*, 493 F.3d at 429 (holding that the plaintiff's standing to challenge the timeliness of the City's decision on its application to construct a billboard "does not provide it a passport to explore the constitutionality of every provision of the Sign Regulation").

The Constitution of the United States limits the jurisdiction of federal courts to live "cases" and "controversies." *See United States v. Salerno*, 481 U.S. 739, 758 (1987). The "'irreducible constitutional minimum' of standing consists of three elements:" the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).[20] "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.*

Based on the undisputed fact that Adams's permit application was denied because the proposed sign did not satisfy the spacing requirements in the Interchange Prohibition, and having determined that the Interchange Prohibition is constitutional, this Court concludes that Adams lacks standing to challenge the exemptions in 36 P.S. § 2718.104 and in 36 P.S. § 2718.105(c)(2)(iv). *See Get Outdoors II, Ltd. Liab. Co.*, 506 F.3d at 893 (explaining that "because standing is addressed on a claim by claim basis, an unfavorable decision on the merits of one claim may well defeat standing on another claim if it defeats the plaintiff's ability to seek redress"). Adams fails to satisfy any of the standing requirements.

First, because Adams's permit application would be denied regardless of the constitutionality of the exemptions (as his proposed sign location is within 500 feet of an interchange), he did not suffer an injury-in-fact, nor is his injury (the denial of his permit application) traceable to the challenged exemptions. *See Mercer Outdoor Adver. v. City of Hermitage*, 605 F. App'x 130, 132 (3d Cir. 2015) (holding that because billboard permits would

---

[20]   *See also Free Speech Coal., Inc. v. AG United States*, 825 F.3d 149, 165-66 (3d Cir. 2016) ("Standing to seek injunctive relief requires a plaintiff to show (1) 'that he is under threat of suffering 'injury in fact' that is concrete and particularized'; (2) 'the threat must be actual and imminent, not conjectural or hypothetical'; (3) 'it must be fairly traceable to the challenged action of the defendant'; and (4) 'it must be likely that a favorable judicial decision will prevent or redress the injury.' (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

not have been issued to the plaintiff sign company even if the challenged section of the zoning ordinance was found to be unconstitutional, the sign company failed to show either injury-in-fact or that its injury was traceable to the actions of the city), *cert. denied* 2015 U.S. LEXIS 6287 (U.S. 2015).  Moreover, even if Adams's proposed sign did not violate the Interchange Prohibition, the exemptions are inapplicable because Adams deals exclusively with constructing and/or selling space on off-premise signs to advertisers, but the exemptions are for on-premise signs and other types of signs that Adams does not deal with.  Adams therefore suffered no injury as a result of these exemptions.  *See id.*; *Spokeo, Inc.*, 136 S. Ct. at 1548 (explaining that the injury must be particular, in that "it 'must affect the plaintiff in a personal and individual way,'" and it must be concrete, in that "it must actually exist" (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992))).

Next, because Adams's application would be denied even if the exemptions are declared unconstitutional,[21] a favorable ruling would not redress the injury Adams suffered.  *See Mercer Outdoor Adver.*, 605 F. App'x at 132 (finding that the sign company lacked standing to raise a First Amendment challenge to a section of the city's zoning ordinance, under which permits to erect billboards would be denied, because even if this section was held to be unconstitutional, permits still would not be issued because the billboards did not meet the requirements of a different section of the zoning ordinance); *Coastal Outdoor Adver. Grp., L.L.C. v. Twp. of Union*, 402 F. App'x 690, 691-92 (3d Cir. 2010) (holding that the plaintiff "did not demonstrate redressability because unchallenged restrictions, including those on the height and size of the signs, would prohibit their erection even if we were to invalidate the provision banning billboards"); *Nittany Outdoor Adver., LLC v. Coll. Twp.*, 22 F. Supp. 3d 392, 404-05 (M.D. Pa.

---

[21]    The only relief Adams seeks is declaratory and injunctive relief, as the claim for monetary relief was previously dismissed with the agreement of Adams.  *See* Opn. 6-7.

2014) (finding that the plaintiff lacked standing to attack the statute's ban on off-premises signs because other restrictions in the statute prevented the plaintiff from obtaining a sign permit, rendering the attack on the statute's ban on off-premises signs unredressable (citing *Get Outdoors II, Ltd. Liab. Co. v. City of San Diego*, 506 F.3d 886, 894 (9th Cir. 2007) (finding no need to address the plaintiff's claim regarding the off-site ban because the statute's size and height restrictions are constitutional and validly prohibit the construction of the proposed billboards)).

Adams therefore lacks standing to challenge the exemptions.[22]

**D.      Summary judgment is entered in favor of Adams as to its claim that the permit section of the Act is facially unconstitutional based on the lack of time limits for granting or denying permit applications, and the permit requirement is declared unconstitutional.**

Adams also raises a facial attack to the Act under the First Amendment based on the absence of any deadlines in the permit requirement to grant or deny applications.

The need for time limits in granting or denial of permit applications is based on the decision of the United States Supreme Court in *Freedman*. The Court held that to avoid constitutional infirmity, a process requiring the submission of a film to a censor must include procedural safeguards to obviate the danger of censorship. *See Freedman v. Maryland*, 380 U.S. 51, 58 (1965). Three procedural safeguards were identified: "(1) any restraint prior to judicial

---

[22]      In reaching this decision, this Court has also considered both the constitutional avoidance doctrine and the severability of the Act. *See Regan v. Time, Inc.*, 468 U.S. 641, 652-53 (1984) (directing a federal court to act cautiously when reviewing the constitutionality of a legislative Act, to "refrain from invalidating more of the statute than is necessary," and to determine if the unconstitutional portion of the Act is severable before invalidating an entire statute, as the "presumption is in favor of severability"); *United States v. Raines*, 362 U.S. 17, 20-21 (1960) (explaining why a district court, mindful of the constitutional avoidance doctrine, should not consider the constitutionality of a statute in applications not before it); 36 P.S. § 2718.114 ("The provisions of this act shall be severable. If any provision of this act is found by a court of record to be unconstitutional and void, the remaining provisions of the act shall, nevertheless, remain valid . . . .").

review can be imposed only for a specified brief period during which the status quo must be maintained; (2) expeditious judicial review of that decision must be available; and (3) the censor must bear the burden of going to court to suppress the speech and must bear the burden of proof once in court." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 227-28 (1990) (discussing *Freedman*). In *FW/PBS*, the Court held that the "core policy underlying *Freedman* is that the license for a First Amendment-protected business must be issued within a reasonable period of time, because undue delay results in the unconstitutional suppression of protected speech." *Id.* at 228. The Court explained that the need for the licensor to "make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained" is "essential." *Id.* Subsequently, in *Thomas*, the Court clarified that the procedural requirements set forth in *Freedman* do not apply to content-neutral permit requirements that regulate speech in a public forum. *See Thomas v. Chi. Park Dist.*, 534 U.S. 316, 322 (2002) (rejecting the petitioners' contention that the municipal ordinance must specify a deadline for judicial review of a challenge to a permit denial because the permit-scheme was content-neutral). *See also Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 435 (4th Cir. 2007) (concluding that the plaintiff's facial challenge to the sign regulation failed because the regulation was content neutral and "did not need time limitations on decisionmaking to be constitutional").

1. **The Act is content based, which requires it to include strict time limits for granting or denying permit applications, and due to the absence of time limits, the permit requirement is unconstitutional.**

It is undisputed that the permit requirement in the Act does not contain any deadlines for applications to be acted upon. *See* 36 P.S. § 2718.107.[23]  Additionally, Richards has not cited to any rules or regulations enacted by PennDOT that impose time restrictions.[24]  It is therefore necessary to determine whether the Act, and not merely the Interchange Prohibition, is content neutral or content based.[25]  This Court must decide whether the exemptions for official signs and on-premise signs contained in 36 P.S. §§ 2718.104[26] and 2718.105(c)(2)(iv) render the Act content-based.

In *Rappa*,[27] the Third Circuit Court of Appeals considered the constitutionality of a state statute regulating outdoor advertising, which included "a series of often overlapping exceptions," including exceptions for directional signs, official signs, and on-premise signs.  *Rappa*, 18 F.3d at 1051.  The court discussed the two tests, previously described herein, used to evaluate a statute regulating speech, based on whether the statute is content-based or content-neutral.  *Id.* at 1053-54.  The court also adopted an intermediate level of scrutiny test that applies when "there is a

---

[23]    36 P.S. § 2718.107 (requiring an annual permit "for each outdoor advertising device regulated by this act").

[24]    In the Opinion denying the Motion to Dismiss this claim, this Court commented that no judicial determination was being made as to whether the Act is in fact unconstitutional because "PennDOT may have enacted additional regulations and provided specific guidance, which when read in conjunction with the Act, would not offend the constitution."  Opn. 18.

[25]    Unlike a challenge to the constitutionality of a statute's exemptions, which requires the court to decide whether each exemption (as opposed to the regulation itself) is content based or content neutral, and to determine whether each exemption satisfies constitutional scrutiny, *see Rappa v. New Castle Cnty.*, 18 F.3d at 1066-69 (considering the exceptions in each subchapter of the sign code separately), a facial challenge to a statute for not including time limits in a permit scheme requires the court to look at the statute as a whole, *see Thomas*, 534 U.S. at 320-22 (considering whether any of the grounds for denying a permit was content based).

[26]    Section 2718.104 also contains an exemption for directional signs.  *See* 36 P.S. § 2718.104(viii).

[27]    *Rappa v. New Castle Cnty.*, 18 F.3d 1043 (3d Cir. 1994).

significant relationship between the content of particular speech and a specific location," and allows the State to exempt such speech from a general ban so long as the exemption was not intended to censor certain viewpoints. *See Rappa*, 18 F.3d at 1065 (explaining and adopting the test proposed by the concurrence in *Metromedia, Inc.*, 453 U.S. 490).[28] In adopting this test, the court explained that "[s]ome signs are more important than others not because of a determination that they are generally more important than other signs, but because they are more related to the particular location than are other signs." *See Rappa*, 18 F.3d at 1054. The court applied intermediate scrutiny to the exceptions for directional signs and official signs, and held that the exception for on-premise signs "is not a content-based exception at all." *See id.* at 1066-67.[29]

As previously explained, "the crucial first step in the content-neutrality analysis [is] determining whether the law is content neutral on its face." *See Reed*, 135 S. Ct. at 2228. A court must make this determination "before turning to the law's justification or purpose." *Id.* In conducting this first step, *Rappa* held that both official signs and directional signs are content-based on their face. *See Rappa*, 18 F.3d at 1054 (stating that the statute "indisputably distinguishes between, and allows the posting of certain signs, (for example, 'for sale' signs and directional signs,) based on the subject matter the signs convey" and "[u]nder a literal understanding of 'content based' that fact makes the statute content-based"). Accordingly,

---

[28] Under this test, the State must "show that the exception is substantially related to advancing an important state interest that is at least as important as the interests advanced by the underlying regulation, that the exception is no broader than necessary to advance the special goal, and that the exception is narrowly drawn so as to impinge as little as possible on the overall goal." *Rappa*, 18 F.3d at 1065.

[29] In the Opinion deciding the Motion to Dismiss, this Court questioned whether *Rappa*'s holding, that an exception for on-premise signs is not content based, remains good law in light of the subsequent decision by the United States Supreme Court in *Reed*. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015) (finding that the sign code's exemption for temporary directional signs was subject to strict scrutiny). However, it was unnecessary to make such a determination at that time, as it is now, because the exceptions for official signs and directional signs are content based on their face.

because 36 P.S. § 2718.104 and 36 P.S. § 2718.105(c)(2)(iv) include exemptions for official signs and/or directional signs, the Act is content based.

As a content-based statute, the Act must include "strict time limits leading to a speedy administrative decision." *See City of Littleton v. Z. J. Gifts D-4, L.L.C.*, 541 U.S. 774, 779 (2004). The Act undisputedly does not. Therefore, the Act's permit requirement in § 2718.107 is unconstitutional for failing to specify a time limit on PennDOT to grant or deny a permit application. *See Nittany Outdoor Adver., LLC*, 22 F. Supp. 3d at 416 (holding that the Township's sign ordinance was "unconstitutional for failing to specify a limitation on the time within which the Township will grant or deny a sign permit application").

### 2. The permit requirement in 36 P.S. § 2718.107 is severed from the Act; however, this will not prevent enforcement of all of the remaining provisions of the Act.

Once a court determines that a portion of a statute is unconstitutional, it must determine if the unconstitutional portion is severable before invalidating an entire statute. *See Regan*, 468 U.S. at 652-53 (holding that the "presumption is in favor of severability"); 1 Pa. C.S. § 1925 ("The provisions of every statute shall be severable."). The Act at issue here includes a severability provision. Section 2718.114 states: "[t]he provisions of this act shall be severable. If any provision of this act is found by a court of record to be unconstitutional and void, the remaining provisions of the act shall, nevertheless, remain valid . . . ." 36 P.S. § 2718.114.

Severability "is about paring away unconstitutional parts of statutes, not rewriting them;" therefore, this Court must invalidate the entire permit requirement in § 2718.107. *See Nittany Outdoor Adver., LLC*, 22 F. Supp. 3d at 417. In deciding that the permit requirement is severable from the remainder of the Act, this Court considers that the restrictions and other regulations may continue to be enforced. *See Nittany Outdoor Adver., LLC v. Coll. Twp.*, No. 4:12-cv-00672, 2014 U.S. Dist. LEXIS 99300, at *15 (M.D. Pa. July 22, 2014) (finding that "the

24

major work of laws is achieved by their in terrorem effect, not actual enforcement[, which] supports the Court's original conclusion: '[T]he Ordinance's permit scheme and after-the-fact enforcement regime are separable, and . . . there is no reason to think the Township, forced to abandon its permit requirement, would have written its Ordinance to abandon sign regulation entirely.'" (quoting *Nittany Outdoor Adver., LLC*, 22 F. Supp. 3d at 418)).

The penalties set forth in the Act are not de minimis and will encourage parties not to violate the Act,[30] allowing the Act to achieve its purpose and supporting severability.

### 3. *Richards is enjoined from enforcing the permit requirement until it provides for internal time limits on permitting decisions.*

Although this Court has found that the permit requirement in § 2718.107 is unconstitutional because it does not provide for strict time limits, this does not mean that the permit requirement cannot be potentially reinstated. Section 2718.106 of the Act provides:

> The secretary is authorized to promulgate rules and regulations governing outdoor advertising devices and such rules and regulations shall contain the criteria set forth under section 5 of this act and shall contain the permit provisions set forth under section 7 of this act. Regulations relating to outdoor advertising devices permitted under clauses (1) through (3) of section 4 shall be no more restrictive than the national standards pertaining to such outdoor advertising devices.

36 P.S. § 2718.106. *See also Chevron, U.S.A., Inc.*, 467 U.S. at 843-44 ("If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."). Accordingly, if PennDOT internally provides for "strict time limits" for deciding permit applications "within a specified

---

[30] *See* 36 P.S. § 2718.111 ("Any person who shall erect or cause or allow to be erected or maintained any advertising device in violation of this act, shall, upon summary conviction thereof, be sentenced to pay a fine of five hundred dollars ($ 500) to be paid into the Highway Beautification Fund, and in default of the payment thereof, shall undergo imprisonment for thirty days. Each day a device is maintained in violation of this act after conviction shall constitute a separate offense.").

and reasonable time period,"[31] the permit regulation may then be enforced.  *See Fla. Cannabis Action Network, Inc. v. City of Jacksonville*, 130 F. Supp. 2d 1358, 1369-70 (M.D. Fla. 2001) (enjoining the City from enforcing the permit requirement in a local ordinance "until such time as the City provides for internal time limits on permitting decisions in a manner not inconsistent with this Order," which determined that the ordinance violated the First Amendment for not including time limits as required by Freedman).

   E.    **Adams's as-applied challenge to the Act based on the one-year delay before the permit application was decided is moot.**

   Like standing, mootness requires that the issues presented are "live," and that the parties have an interest in the litigation.  *See United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395-96 (1980).  "A mootness inquiry asks whether a claimant's standing continues throughout the litigation."  *Policastro v. Kontogiannis*, 262 F. App'x 429, 433 (3d Cir. 2008).  A "case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Powell v. McCormack*, 395 U.S. 486, 496 (1969).  Because the "court's ability to grant effective relief lies at the heart of the mootness doctrine, . . . if developments occur during the course of adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or prevent a court from being able to grant the requested relief, the case must be dismissed as moot."  *Policastro*, 262 F. App'x at 433 (quoting *Donovan ex. rel. Donovan v. Punxsutawney Area School Bd.*, 336 F.3d 211, 216 (3d Cir. 2003)).

   It is undisputed that PennDOT denied Adams's permit application after the initiation of this suit.  Importantly, Adams does not seek damages; rather, its claim is limited to injunctive

---

[31]       *See City of Littleton*, 541 U.S. at 779 (requiring "strict time limits leading to a speedy administrative decision"); *FW/PBS, Inc.*, 493 U.S. at 228 (1990) (explaining that the licensor must "make the decision whether to issue the license within a specified and reasonable time period during which the status quo is maintained").

and declaratory relief.  But, injunctive relief is not available as it would no longer redress

Adams's alleged injury, and "declaratory relief would amount to no more than an advisory

opinion regarding the 'wrongfulness' of past conduct."  *See Policastro*, 262 F. App'x at 433-34

(explaining that a federal court does not have the power to render advisory opinions).

Accordingly, Adams's as-applied challenge to the Act based on the one-year delay before

PennDOT acted on its application is denied as moot.

## V.	CONCLUSION

Adams does not assert that there was an intervening change in the controlling law, nor

does it cite to any new evidence that was not available at the time of the Opinion deciding the

Motion to Dismiss, nor does Adams show there is any need to correct a clear error of law or fact

or to prevent manifest injustice.  Rather, Adams merely disagrees with this Court's prior decision

dismissing his vagueness challenge, which is not a basis for reconsideration.  The Motion for

Reconsideration is therefore denied.

The Interchange Prohibition, which applies to all structures, is a content-neutral

regulation of speech that is narrowly tailored to the Commonwealth's interests in protecting

motorists and promoting traffic safety, and leaves open alternative channels of communication.

Because Adams's permit application was denied because the proposed sign did not conform to

the Interchange Prohibition, Adams suffered no injury as a result of exemptions in 36 P.S. §

2718.104 and § 2718.105(c)(2)(iv), nor would the injury he suffered from the denial of his

application be redressed by a favorable decision.  He therefore lacks standing to challenge the

constitutionality of the exemptions.

The Act, as a whole, is a content-based statute and must include strict time limits for

approving or denying permit applications.  Because the permit requirement does not include such

time limits, it is unconstitutional and is severed from the remainder of the Act. Adams's as-applied challenge to the Act based on the one-year delay before its application was decided is moot because injunctive and declaratory relief are no longer available, and Adams does not have a damages claim.

A separate order follows.

BY THE COURT:

/s/ Joseph F. Leeson, Jr.
JOSEPH F. LEESON, JR.
United States District Judge